IN THE CIRCUIT COURT OF THE 18th JUDICIAL CIRCUIT IN AND FOR SEMINOLE COUNTY, FLORIDA

CASE NO: 2025CA000147

**RCBA NUTRACEUTICALS, LLC d/b/a RONNIE COLEMAN SIGNATURE SERIES,**

Plaintiff,

vs.

**CONTINENTAL CASUALTY COMPANY,**

Defendant.

UNOFFICIAL

## COMPLAINT

Plaintiff, RCBA Nutraceuticals, LLC d/b/a Ronnie Coleman Signature Series ("Plaintiff" or "RCBA"), files this Complaint and sues Defendant, Continental Casualty Company ("Continental" or "Defendant"), and alleges:

## I. GENERAL ALLEGATIONS

1. This is a cause of action for damages in excess of $50,000.00, exclusive of interest and costs. [1]

2. Plaintiff, RCBA Nutraceuticals, LLC, is a Florida limited liability company whose principal place of business is located in Seminole County, Florida.

3. At all times materials hereto, Defendant, Continental, was and is a for-profit corporation that regularly conducts its insurance business in Florida. This Court has personal

[1] The estimated value of Plaintiff's claim is in excess of the minimum jurisdictional threshold required by this Court. Accordingly, Plaintiff has entered "$50,001" in the civil cover sheet for jurisdictional purposes only (the Florida Supreme Court has ordered that the estimated "amount of claim" be set forth in the civil cover sheet for data collection and clerical purposes only). The actual value of Plaintiff's claim will be determined by a fair and just jury in accordance with Article I, Section 21, Fla. Const.

jurisdiction over Continental pursuant to Section 48.193, Fla. Stat. because Continental operates and conducts a business or business venture in the State of Florida, committed various tortious acts within the state of Florida as more fully set forth below, and issues insurance contracts to insure a person, property, or risk located within Florida.

4. At all relevant times, Continental issued a commercial general liability insurance policy ("Continental Policy") to its insured, Western Packaging, Inc. ("Western"). The Continental Policy provides general aggregate coverage limits of $2,000,000 ("Policy Limits").

5. Venue is proper in Seminole County, Florida pursuant to Section 47.051, Fla. Stat.

**Ronnie Coleman Signature Series**

6. RCBA, which does business as "Ronnie Coleman Signature Series," is an American success story and a leader in the Protein Supplement marketplace. Plaintiff was founded in 2011 by two close friends, Ronnie Coleman and Brendan Ahern, and within a year it had an agreement with GNC for its over 3,000 stores.

7. Ronnie Coleman is a quite literally a legend in his own time. He is an eight (8) time champion as Mr. Olympian (with greater success in free weight training than all predecessors including Arnold Schwarzenegger). A documentary on Mr. Coleman named "The King"[2] was No. 1 on the Netflix documentary charts.

8. Mr. Coleman is considered one of the greatest body builders of all time, and his company, RCBA, became one of the leaders in the international marketplace.

9. At all material times, Plaintiff sold Whey XS, Gainer XS, King Mass XL ("Plaintiff's Products"), among other products. Plaintiff's Products were sold in, 5 lb., 10 lb., and 15 lb. plastic Zipper Bags:

[2] Not to be confused with a recent No. 1, "Tiger King" on Netflix.

UNOFFICIAL

  

10. By the end of 2016, RCBA had earned a solid reputation as a trusted and premium brand in the protein supplement market. A product called Ronnie Coleman's "King Mass XL" was RCBA's No. 1 selling product as a total weight gainer in the world.

**RCBA and Western Enter Into a Contract for Manufacturing of the Zipper Bags.**

11. In late 2016, Western, solicited and/or approached RCBA and offered to manufacture plastic zipper bags for Plaintiff's Products ("Zipper Bags"). RCBA was interested, because it wanted to shift the manufacturing of its packaging to the United States, from China, where its bags were being made and to have higher quality bags.

12. All material times, Western offered to design, engineer and supply the custom Zipper Bags.

13. At all material times, Western negligently misrepresented its capabilities and experience to Plaintiff.

14. Beginning in August 2017, Plaintiff began to be bombarded with complaints about the Zipper Bags breaking and leaking from customers and distributors.[3]

15. The Zipper Bags were discovered to be defective at over twelve (12) of Plaintiff's major distributors around the world. Among other things, the Zipper Bags were commercially and

UNOFFICIAL

[3] The Zipper Bags, not the products inside, were the problem.

structurally unfit, and the plastic edges or seems fell apart causing Plaintiff's Products to leak and pour out:

The Zipper Bags were a failure. The openings in the Zipper Bags also resulted in destruction of Plaintiff's Products.

16. As a result of the defective Zipper Bags sold by Western, Plaintiff was substantially damaged.

**RCBA'S Pre-Suit Demand and Lawsuit Against Western**

17. In or around August 2018, RCBA gave Continental notice of its claims against Western regarding the defective Zipper Bags ("Claims").

18. On August 13, 2018, RCBA sent Continental an initial demand letter seeking $1,411,890.

19. On December 4, 2018, in an attempt to avoid litigation, RCBA made a second demand of $160,000 to settle all claims against Western.

20. Upon investigation of the Claims, Continental knew that the Claims were covered under Continental's Policy and that Western was liable for RCBA's damages. Nevertheless, Continental refused to respond either the August 13, 2018, or December 4, 2018, demand letters.

UNOFFICIAL

21. On February 22, 2019, given Continental's failure to make any attempts to reach a settlement or respond to RCBA's demand letters, RCBA was forced to file a lawsuit against Western in Seminole County, Florida Circuit Court styled *RCBA Nutraceuticals d/b/a Ronnie Coleman Signature Series v. Western Packaging, Inc. et al.* Case No. 2019-CA-000787 ("Lawsuit").

22. Subsequently, Continental undertook defense of Western in the Lawsuit.

23. On November 29, 2022, RCBA sent Continental a letter advising Continental of its failure to make any settlement attempts, the potential for an excess judgment, Western's lack of independent counsel, and the potential for an excess judgment against Western. RCBA's November 29, 2022, letter also sought that Continental tender the Policy Limits under the Continental Policy to resolve RCBA's claims against Western asserted in the Lawsuit.

24. On May 26, 2023, RCBA sent Continental yet another letter where it notified Continental of its failure to respond to RCBA's 2018 demand letters, failure to engage in settlement attempts, failure to protect Western for extracontractual liability, RCBA's damages exceeding the policy limits, failure to provide Western independent counsel to protect its interest, and Continental's conduct that amounted to bad faith. RCBA's May 26, 2023, letter also sought that Continental tender the Policy Limits under the Continental Policy to resolve RCBA's claims against Western asserted in the Lawsuit.

25. Throughout the Lawsuit, RCBA also made numerous efforts to attempt to settle its claims against Western.

26. On January 6, 2025, following a five-week jury trial in the Lawsuit, a Final Judgment was entered in RCBA's favor awarding RCBA a recovery of $10,464,100 from Western ("Final Judgment") not including attorney's fees, costs, and prejudgment and post-judgment interest. A copy of the Final Judgment is attached as **Exhibit A.**

UNOFFICIAL

27. RCBA has standing to bring this action as a judgment creditor of Western and third-party beneficiary under the Continental Policy providing coverage to Western.

28. All conditions precent to Plaintiff's right to bring this action have occurred or have been excused.

**COUNT I – COMMON LAW THIRD PARTY BAD FAITH**

29. RCBA re-alleges and incorporates by reference the allegations of paragraphs 1 through 27, as fully set forth above.

30. At all times material, Continental owed Western a non-delegable fiduciary duty to protect it from a judgment that exceeded their limits of liability and to act in their best interests throughout Continental's handling of Plaintiff's claims and the underlying Lawsuit.

31. This fiduciary duty obligated Continental to, among other things:

a. Act fairly and honestly and with due regard for the interests of Western;

b. Exercise reasonable diligence and a level of care commensurate with the undertaking, in every aspect of handling Plaintiff's claims against Western;

c. Work on Western's behalf to avoid an excess judgment with the same haste and precision as if it were in Western's shoes;

d. Settle Plaintiff's claims against Western, when, under all the circumstances of the case, it could have and should have done so had it acted fairly and honestly, and with due regard for the interest of Western;

e. Proactively and timely attempting to engage in settlement negotiations;

f. Adopt and implement standards for the proper handling of liability claims, commensurate with the needs of the types of claims reasonably anticipated to be presented against Western or its other insured;.

g. Properly train adjusters and claims personnel for the types of claims which would be undertaken by those employees;

h. Communicate with Western and other insured candidly and with complete integrity, and keep the Western and other insured informed of the claim resolution process;

UNOFFICIAL

    i. Fully, honestly, and promptly advise Western and other insured concerning any settlement opportunities, of the likelihood of a recovery in excess of the policy limits, of the steps Western might take to avoid same, and of any procedures which were available to lessen the financial impact of the underlying claims against Western and other insured;

j. Allow Western and other insured to minimize its damages by agreeing to a reasonable consent judgment;

k. Inform Western of the probable outcome of the Lawsuit and warn Western of the possibility of an excess judgment.

l. Avoid putting Continental's own interest ahead of Western's interest or other insured;

m. Providing Western independent counsel to advise Western of the potential consequences of an excess judgment and avoid a conflict of interest between Continental and Western; and

n. Handle Plaintiff's claims and similar claims in accordance with applicable laws, statues, governmental and industry regulations that establish the obligations and standard of conduct for liability insurance companies handling claims, as well as Continental's own policies.

32. Continental breached its non-delegable fiduciary duties to Western by, among other things:

a. Failing to act fairly and honestly and with due regard for the interest of Western;

b. Failing to exercise reasonable diligence and a level of care commensurate with the undertaking, in every aspect of handling Plaintiff's claims against Western;

c. Failing to work on Western's behalf to avoid an excess judgment with the same haste and precision as if it were in Western's shoes;

d. Failing to settle Plaintiff's claims against Western, when, under all the circumstances of the case, it could have and should have done so had it acted fairly and honestly, and with due regard for the interests of Western;

e. Willfully and without cause delaying to engage in settlement negotiations;

f. Failing to tender policy limits under the Continental Policy providing coverage to Western;

UNOFFICIAL

      g. Failing to adopt and implement standards for the proper handling of liability claims, commensurate with the needs of the types of claims reasonably anticipated to be presented against its insured, including Western;

h. Failing to properly train adjusters and claims personnel for the types of claims which would be undertaken by those employees;

i. Failing to communicate with Western candidly and with complete integrity, and keep Western informed of the claim resolution process;

j. Failing to fully, honestly and promptly advise Western concerning any settlement opportunities, of the likelihood of a recovery in excess of the policy limits, of the steps Western might take to avoid the same, and of any procedures which were available to lessen the financial impact of the underlying claims made by Plaintiff against Western;

k. Refusing to allow Western to minimize her damages by agreeing to a reasonable consent judgment;

l. Inform Western of the probable outcome of the Lawsuit and warn Western of the possibility of an excess judgment.

m. Putting Continental's own interests ahead of Western's interests;

n. Providing Western independent counsel to advise Western of the potential consequences of an excess judgment and avoid a conflict of interest between Continental and Western; and

o. Failing to handle Plaintiff's claims and similar claims in accordance with applicable laws, statutes, governmental and industry regulations that establish the obligations and standard of conduct for liability insurance companies handling claims, as well as Continental's own policies.

33. As a direct and proximate result of Continental's breaches of these duties:

a. Plaintiff's claims against Western did not settle within the amounts of available insurance coverage; and

b. Western suffered damages, including the entry of a Final Judgment attached as **Exhibit A**.

UNOFFICIAL

**WHEREFORE**, Plaintiff, RCBA Nutraceuticals, LLC d/b/a Ronnie Coleman Signature Series, demands judgment against Defendant, Continental Casualty Company, together with prejudgment interest, post-judgment interest, attorney's fees, taxable costs, and any other relief as the Court may deem just and appropriate.

**DEMAND FOR JURY TRIAL**

RCBA demands a trial by jury on all issues so triable.

Respectfully Submitted,

**CLAYTON TRIAL LAWYERS, PLLC**
*Attorneys for Plaintiff RCBA Nutraceuticals, LLC*
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Phone: (954) 712-2300

By: */s/ William R. Clayton*
WILLIAM R. CLAYTON
Florida Bar No. 485977
claytonw@ctllawyers.com
rosr@ctllawyers.com
MIGUEL ARISTIZABAL
Florida Bar No. 124925
aristizabalm@ctllawyers.com
service@ctllawyers.com
RILEY F. KENNEDY
Florida Bar No. 124149
kennedyr@ctllawyers.com
dasilvak@ctllawyers.com

UNOFFICIAL

Filing # 213939993 E-Filed 01/06/2025 11:02:53 AM EXHIBIT A

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL CIRCUIT IN
AND FOR SEMINOLE COUNTY, FLORIDA

RCBA NUTRACEUTICALS, LLC d/b/a
RONNIE COLEMAN SIGNATURE SERIES,

Plaintiff,

CASE NO: 2019-CA-000787-W

vs.

WESTERN PACKAGING, INC., and
POLYFIRST PACKAGING, INC.,

Defendants.
_______________________________________/

WESTERN PACKAGING, INC.,

Cross-Plaintiff/Cross-Defendant,

vs.

POLYFIRST PACKAGING, INC.,

Cross-Defendant/Cross-Plaintiff.
_______________________________________/

UNOFFICIAL

**FINAL JUDGMENT**

Pursuant to the Verdict rendered by the Jury in this action on October 17, 2024 (the "Jury's Verdict"),

**IT IS ORDERED AND ADJUDGED** that Plaintiff, RCBA NUTRACEUTICALS, LLC d/b/a RONNIE COLEMAN SIGNATURE SERIES ("RCBA"), shall have and recover from the Defendants in this action in accordance with the following:

1. On RCBA's claim against Defendant, WESTERN PACKAGING, INC. ("Western"), for Fraudulent Misrepresentation (Count III), the Jury rendered its Verdict in favor of RCBA. The Jury determined that RCBA proved damages on this claim in the amount of $10,422,100.00, as follows:

   a. Out-of-Pocket Damages (Hard Cost Loss): $2,422,100.

   b. Lost Profits: $7,500,000.

c. Lost Investor Damages: $500,000.

2. On RCBA's claim against Western for Negligent Misrepresentation (Count IV), the Jury rendered its Verdict in favor of RCBA. The Jury determined that RCBA proved damages on this claim in the amount of $10,422,100.00, as follows:

a. Out-of-Pocket Damages (Hard Cost Loss): $2,422,100.

b. Lost Profits: $7,500,000.

c. Lost Investor Damages: $500,000.

The jury assigned the following percentages of fault:

Defendant, WESTERN PACKAGING, INC.: 50%.

Defendant, POLYFIRST PACKAGING, INC.: 50%.

3. On RCBA's claim against Western for violation of the Florida Deceptive and Unfair Trade Practices Act (Count V), the Jury rendered its Verdict in favor of RCBA in the amount of $42,000.

4. On RCBA's claim against Western for Breach of Express Warranty Under the UCC (Count VI), the Jury rendered its Verdict in favor of RCBA. The Jury determined that RCBA proved damages on this claim in the amount of $9,964,100.00, as follows:

a. Actual Damages: $42,000.

b. Incidental Damages (inc. out of pocket/hard cost loss): $2,422,100.

c. Consequential Damages (inc. lost profits): $7,500,000.

5. On RCBA's claim against Western for Breach of Implied Warranty of Fitness for a Particular Purpose Under the UCC (Count VII), the Jury rendered its Verdict in favor of RCBA. The jury determined that RCBA proved damages on this claim in the amount of $9,964,100.00, as follows:

UNOFFICIAL

      a. Actual Damages: $42,000.

b. Incidental Damages (inc. out of pocket/hard cost loss): $2,422,100.

c. Consequential Damages (inc. lost profits): $7,500,000.

6. On RCBA's claim against Defendant, POLYFIRST PACKAGING, INC. ("PolyFirst"), for Breach of Contract as Third-Party Beneficiary (Count XIII), the Jury rendered its Verdict in favor of RCBA. The Jury determined that RCBA proved damages on this claim in the amount of $9,964,100.00, as follows:

a. Actual Damages: $42,000.

b. Incidental Damages (inc. out of pocket/hard cost loss): $2,422,100.

c. Consequential Damages (inc. lost profits): $7,500,000.

The jury assigned the following percentages of fault:

Defendant, POLYFIRST PACKAGING, INC.: 50%.

Defendant, WESTERN PACKAGING, INC.: 50%.

7. In accordance with the Jury's Verdict, RCBA shall have and recover from Western the sum of $10,464,100.00, which shall bear interest at 9.5% from the date of this Final Judgment, subject to adjustment under section 55.03, Florida Statutes, for which sum let execution issue, subject to the reservations in paragraphs 20 and 21, below.

8. In accordance with the Jury's Verdict, RCBA shall have and recover from PolyFirst the sum of $4,982,050.00, which shall bear interest at 9.5% from the date of this Final Judgment, subject to adjustment under section 55.03, Florida Statutes, for which sum let execution issue, subject to the reservations in paragraphs 20 and 21, below.

9. The addresses for RCBA, Western, and PolyFirst are identified below. Each party has confirmed that the address attributed to the party is accurate:

UNOFFICIAL

RCBA's address is: 635 Century Pt., Suite 121, Lake Mary, FL 32746.

Western's address is: 2301 Crown Ct., Irving, TX 75038.

PolyFirst's address is: 2261 Innovation Way, Hartford, WI 53027.

**IT IS FURTHER ORDERED AND ADJUDGED** that

10. Western and PolyFirst (hereinafter, the "Judgment Debtors") shall each complete under oath Florida Rule of Civil Procedure Form 1.977(b) (Fact Information Sheet – For Corporations and Other Business Entities), including all required attachments, and serve it on RCBA's attorneys within 45 days from the date of this Final Judgment, unless this Final Judgment is satisfied or post-judgment discovery is stayed.

11. Jurisdiction of this case is retained by this Court to enter further orders that are proper to compel the Judgment Debtors to complete Form 1.977(b), including all required attachments, and serve it on RCBA's attorneys.

**IT IS FURTHER ORDERED AND ADJUDGED** that

12. Judgment is entered in the favor of PolyFirst on Negligence (Count I), and PolyFirst shall go hence without day.

13. Judgment is entered in favor of Western on Common Law Breach of Warranty (Count VIII), and Western shall go hence without day.

14. Judgement is entered in favor of Western on Breach of Contract (Count IX), and Western shall go hence without day.

15. Judgment is entered in the favor of PolyFirst and Western on Civil Conspiracy (Count XIV), and Western and PolyFirst shall go hence without day.

16. Judgment is entered in favor of PolyFirst on Western's crossclaim for Breach of Contract (Count I), and PolyFirst shall go hence without day.

UNOFFICIAL

17. Judgment is entered in favor of PolyFirst on Western's crossclaim for Common Law Indemnity (Count II), and PolyFirst shall go hence without day.

18. Judgment is entered in favor of PolyFirst on Western's crossclaim for Breach of Implied Warranty (Count III), and PolyFirst shall go hence without day.

19. Judgment is entered in favor of Western on PolyFirst's crossclaim for Common Law Indemnity (Count I), and Western shall go hence without day.

**IT IS FURTHER ORDERED AND ADJUDGED** that, notwithstanding anything above to the contrary

20. The Court reserves jurisdiction over the subject matter and the parties. The Court specifically reserves jurisdiction to consider and rule on any timely filed post-verdict motions, including but not limited to such motions pertaining to remittitur and/or election of remedies, and to determine entitlement to prejudgment interest, costs, and attorneys' fees and, if entitlement is found, to determine the amounts the movant shall recover, and to determine the applicability of the single recovery rule and, if applicable, apply the single recovery rule.

UNOFFICIAL

21. Enforcement of this judgment is stayed until decision by this court on the Defendants' post-verdict motions, plus seven (7) days to permit the filing of an appeal, if any, and the posting of an appeal bond. Upon posting a good and sufficient appeal bond, discovery in aid of execution is stayed pending appeal. *Safepoint Ins. Co. v. Ellison,* 2024 WL 4219149 (Fla. 3d DCA 2024); *Pneumo Abex LLC v. Mallia,* 923 So.2d 1197 (Fla. 3d DCA 2006).

**DONE AND ORDERED** in Chambers, Sanford, Seminole County, Florida this

UNOFFICIAL

59-2019-CA-000787 12/28/2024 09:52:42 AM

Saturday, December 28, 2024

Susan Stacy, Circuit Judge
59-2019-CA-000787 12/28/2024 09:52:42 AM

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via the Florida Courts Efiling portal to the following on Monday, January 6, 2025

KEVIN W STONE JR

kstone@whelancorrente.com

kstone2545@gmail.com

WILLIAM RENDEN CLAYTON

claytonw@ctllawyers.com

rosr@ctllawyers.com

service@ctllawyers.com

ADAM CRAIG HERMAN

aherman@theorlandolawgroup.com

dbroxson@theorlandolawgroup.com

sromero@theorlandolawgroup.com

G DOUGLAS NAIL

gnail@amfam.com

SHARON C DEGNAN

scd-kd@kubickidraper.com

SARA A BRUBAKER

sara.brubaker@akerman.com

marisol.mojica@akerman.com

barbara.morrison@akerman.com

KENWAY WONG

kenway.wong@akerman.com

wanda.thomas@akerman.com

GERALD B COPELAND JR

gerald.cope@akerman.com

LILLIAN CHAVES MOON

UNOFFICIAL

lillian.moon@akerman.com

MICHAEL R ESPOSITO

Michael.Esposito@BlankRome.com

BRFLeservice@blankrome.com

sol.cruz@blankrome.com

William R Clayton

claytonw@ctllawyers.com

rosr@ctllawyers.com

service@ctllawyers.com

Riley Francis Kennedy

kennedyr@ctllawyers.com

rkennedy8214@outlook.com

UNOFFICIAL



**EXHIBIT D**
***(Form Ex. D)***

IN THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR SEMINOLE COUNTY, FLORIDA

CASE NO:

_________________________,
Plaintiff(s),

v.

_________________________,
Defendant(s).

__________________________________________/

**AGREED CASE MANAGEMENT PLAN AND ORDER**
**(GENERAL)**

According to the dictates of Administrative Order AOSC20-23 of the Florida Supreme Court and AO 24-06 3rd Amended, Eighteenth Judicial Circuit, it is hereby stated that the parties hereby submit this agreed upon Case Management Plan for approval by the Court. All parties have signed the plan to indicate that the deadlines and projected trial date have been stipulated.

UNOFFICIAL

**CASE MANAGEMENT PLAN**

| | |
|---|---|
| Projected trial date, jury or non-jury indication, and estimated length of trial ***Should not exceed 18 months from the date of service of initial process on the last defendant or 120 days after the commencement of the action, whichever occurs first.*** | Projected trial (month/day/year)___________ Jury/non-jury_____________ Length of trial ______ hours/days ***Actual trial date to be set by Trial Order*** |
| Deadline for service of process | 120 days from the initial filing of the complaint |
| Deadline for adding new parties or amendments to the pleadings | ____ days since the first response date (i.e. Answer, Notice of Appearance, Motion to Extend Time, Motion to Dismiss, etc.) |

| | |
|---|---|
| Deadline for fact witnesses and exhibit disclosure from all parties | _____ days before the projected trial date |
| Deadline for Disclosure of Plaintiff's expert witnesses | _____ days before the projected trial date |
| Deadline for Disclosure of Defendant's expert witnesses | _____ days before the projected trial date |
| Deadline for the completion of all fact AND expert discovery, including all Motions to Compel being FILED and HEARD | _____ days before the projected trial date |
| Deadline for all objections to the pleadings and all pre-trial motions FILED and HEARD | _____ days before the projected trial date |
| Deadline for all dispositive motions (including Daubert Motions) FILED and HEARD | _____ days before the projected trial date |
| Deadline for mediation | _____ days before the projected trial date |

**We hereby certify that all parties have met and conferred regarding all proposed deadlines in the Case Management Plan and certify that all deadlines have been agreed to by the parties.**

______________________________
Signature of Counsel: Plaintiff(s)/
Pro Se Litigant

______________________________
Printed name of Counsel/Pro Se Litigant
Florida Bar Number:
Email address

______________________________
Signature of Counsel: Defendant(s)/
Pro Se Litigant

______________________________
Printed name of Counsel/Pro Se Litigant
Florida Bar Number:
Email Address

**ORDER APPROVING CASE MANAGEMENT PLAN**

**ORDERED** that the preceding deadlines apply to this action and that the same will be strictly applied and enforced by the Court:

1. **COMPLIANCE WITH THIS CASE MANAGEMENT ORDER**: The parties shall strictly comply with the terms of this Case Management Plan and Order unless otherwise ordered by the Court. FAILURE TO COMPLY WITH ALL THE REQUIREMENTS OF THIS ORDER MAY RESULT IN THE IMPOSITION OF SANCTIONS.

UNOFFICIAL

2. **ADDITIONAL EIGHTEENTH CIRCUIT AND DIVISION SPECIFIC GUIDELINES**: All counsel and unrepresented parties shall familiarize themselves and comply with the requirements of the following: (i) Amended Administrative Order Establishing the Eighteenth Judicial Circuit Courtroom Decorum Policy (AO 09-06); and (ii) any division-specific guidelines and policies that may be applicable.

3. **MODIFICATION OF THIS ORDER**: The parties may not, individually or by agreement, alter, extend, or waive the deadlines in this Order. The provisions in this Order may only be modified upon motion/stipulation and Court order approving the modification.

4. **NOTICES/MOTIONS FOR TRIAL**: Parties may file a Motion or Notice for Trial if they are ready for trial more than 120 days before the above-projected trial date. The Plaintiff shall confer with opposing counsel/party regarding the anticipated length of the trial and file a Motion or Notice for Trial. The Plaintiff shall forward a copy of the Motion or Notice for Trial to the Case Manager at the email address noted on the Eighteenth Judicial Circuit website.

5. **DISCOVERY**: All counsel and unrepresented parties shall familiarize themselves with the current edition of the Florida Handbook on Civil Discovery Practice and seek to resolve discovery issues without court intervention whenever possible.

6. **SERVICE OF THIS ORDER**: Counsel is ordered to promptly serve and file proof with the Clerk, no more than five (5) business days from the date of this Order that all pro se parties, subsequently named or appearing herein, have been served copies of this Order. In the event a party is unrepresented and has not designated an email address for purposes of electronic service, counsel for Plaintiff shall be responsible for serving this Order and all future orders of the Court via a non-electronic means (U.S. mail, Federal Express or the equivalent) and shall file a Certificate of Service with the Court indicating who was served, the date of service, and the method of service (including any address or email used) within three (3) business days. If Plaintiff is unrepresented, Counsel for Defendant shall have this same obligation. If all parties are unrepresented, the Plaintiff shall provide stamped addressed envelopes to the Court with submission of this and any other proposed Order.

**DONE AND ORDERED** this _____ day of ______________, ________ in Seminole County, Florida.

_____________________________
CIRCUIT JUDGE

***<u>A true and correct copy of the foregoing was distributed to all parties by filing and service via the eportal to all attorney(s)/interested parties identified on the eportal Electronic Service List.</u>***

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator in your county at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days. If you are hearing or voice impaired, call 711**

UNOFFICIAL